CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

06/21/2018

JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY,<br><br>         *Plaintiff*,<br><br>v.<br><br>W.W. ASSOCIATES, INC., *ET AL.*,<br><br>         *Defendants*. | CASE NO. 3:17-cv-00027<br><br><u>MEMORANDUM OPINION</u><br><br>JUDGE NORMAN K. MOON |

  The parties have filed cross-motions for summary judgment. Plaintiff Admiral Insurance Company ("Admiral") seeks a declaratory judgment regarding an exclusion in a professional services insurance policy ("the Policy"). The Policy, delivered in Virginia to Defendant W.W. Associates, Inc. ("W.W."), provides insurance coverage for claims arising out of W.W.'s work as a civil engineering firm. An automobile accident, allegedly caused by W.W.'s negligent engineering of a road, resulted in personal injuries to Defendants Miriam and Mustapha Baha, and the death of Bonnie Baha (collectively "the Baha Defendants"). The issue is a narrow one: whether an exclusion in the Policy, precluding coverage for "any claim which arises from, or is related to, any collision or accident involving an automobile . . . ," bars coverage for claims arising out of an automobile accident. Because the plain language of the Policy unambiguously excludes such coverage, I will grant Admiral's motion, and deny W.W.'s cross-motion.

### I. Standard of Review

  Federal Rule of Civil Procedure 56(a) provides that a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When considering cross-motions for summary judgment, the court must "consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Defs. of Wildlife v. N.C. DOT*, 762 F.3d 374, 392 (4th Cir. 2014).

## II. Factual Background

### A. The Policy

The Policy, which provides professional services liability coverage on a "claims-made and reported basis," articulates the scope of its coverage as follows:

> The Company shall pay on behalf of the *insured* those *damages* in excess of the Deductible that the *insured* becomes legally obligated to pay to others, but only:
> 1. If such *damages* result from a *wrongful act* committed by any *insured* in performing or failing to perform *professional services* anywhere in the world; and
> . . . .
> The Company will pay all *claims expenses* in excess of the Deductible for all *claims*[1] covered under the terms of this policy.

(Dkt. 27-1 at ECF 19) (emphasis in original). The Policy goes on to list several "Exclusions" that preclude coverage. One such exclusion precludes coverage for damages, claims expense, or any defense for: "Any *claim* which arises from, or is related to, any collision or accident involving an automobile . . ." ("the Automobile Exclusion"). (Dkt. 27-1 at ECF 27–28) (emphasis in original).

### B. The Underlying Actions

On August 12, 2016, Defendants Bonnie, Miriam, and Mustapha Baha were in an automobile accident. An automobile, operated by Franklin Reider (who is not a party to the

---

[1] Under the Policy, "[t]he term *claim* means an oral or written notice to the *named insured* from any party intending to hold any *insured* responsible for *damages* arising out of a *wrongful act* committed by any *insured* in performing or failing to perform *professional services*." (Dkt. 27-1 at ECF 23) (emphasis in original).

instant suit), struck the Baha Defendants as they traversed a crosswalk near the Shops at Stonefield in Charlottesville, Virginia. The accident killed Bonnie and resulted in personal injuries to Miriam and Mustapha. The Baha Defendants filed several lawsuits ("underlying actions") alleging $185,000,000 in damages for, *inter alia*, wrongful death against Reider and negligent engineering against W.W. The Baha Defendants allege, among other things, the accident was caused by the negligent design of the road.

After being notified of the suit, Admiral informed W.W. of the exclusion in the policy pertaining to automobile accidents. Admiral agreed to defend W.W. in the underlying actions pursuant to a reservation of rights. Admiral now seeks a declaratory judgment confirming that, under the Automobile Exclusion, it does not have to defend or pay for damages arising from the underlying actions.

### III. Discussion

**A.     The Automobile Exclusion is Clear and Unambiguous**

Because the Policy was delivered to W.W. in Virginia, Virginia law applies. *Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408, 419 (4th Cir. 2004). Under Virginia law, "[a]n insurance policy is a contract . . . ." *State Farm Fire & Cas. Co. v. Walton*, 423 S.E.2d 188, 191 (Va. 1992). The rule is well established "that when the language in an insurance policy is clear and unambiguous, courts do not employ rules of construction; rather, they give the language its plain and ordinary meaning and enforce the policy as written." *P'ship Umbrella, Inc. v. Fed. Ins. Co.*, 530 S.E.2d 154, 160 (Va. 2000). Language in an insurance policy is considered "ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time." *S.F. v. W. Am. Ins. Co.*, 463 S.E.2d 450, 452 (Va. 1995). "Where two constructions are equally possible, that most favorable to the insured will be

adopted. Language in a policy purporting to exclude certain events from coverage will be construed most strongly against the insurer." *St. Paul Fire & Marine Ins. Co. v. S.L. Nusbaum & Co.*, 316 S.E.2d 734, 736 (Va. 1984). However, "[c]ontracts are not rendered ambiguous merely because the parties disagree as to the meaning of the language employed by them in expressing their agreement." *Wilson v. Holyfield*, 313 S.E.2d 396, 398 (Va. 1984).

W.W. has the initial "burden to establish coverage under the terms of the policy endorsement." *Furrow v. State Farm Mut. Auto. Ins. Co.*, 375 S.E.2d 738, 740 (Va. 1989). "[O]nly the allegations in the [underlying action's] complaint and the provisions of the insurance policy are to be considered in deciding whether there is a duty on the part of the insurer to defend and indemnify the insured." *AES Corp. v. Steadfast Ins. Co.*, 725 S.E.2d 532, 535 (Va. 2012). Here, both parties agree the underlying actions would be covered under the Policy absent an exclusion. The complaints filed in the underlying actions seek damages for personal injuries arising from W.W.'s alleged negligent engineering—a wrongful act under the policy.[2] (Dkt. 1-2). Accordingly, W.W. has met its initial burden.

The burden then shifts to Admiral to show that the Automobile Exclusion unambiguously applies. *Transcon. Ins. Co. v. RBMW, Inc.*, 551 S.E.2d 313, 318 (Va. 2001) ("[T]he burden is upon the insurer to prove that an exclusion applies. Reasonable exclusions not in conflict with statute will be enforced, but it is incumbent upon the insurer to employ exclusionary language that is clear and unambiguous.") (quoting *American Reliance Ins. Co. v. Mitchell,* 385 S.E.2d 583, 585 (Va. 1989))).

The Automobile Exclusion, barring coverage for "[a]ny claim which arises from, or is

---

[2] "The Company shall pay on behalf of the *insured* those *damages* in excess of the Deductible that the *insured* becomes legally obligated to pay to others, but only: 1. If such *damages* result from a *wrongful act* committed by any *insured* in performing or failing to perform *professional services* anywhere in the world . . . ." (Dkt. 27-1 at ECF 19).

related to, any collision or accident involving an automobile . . . or vehicle of any kind or type," simply means what it says: there is no coverage for claims arising from automobile accidents. *See Fed. Ins. Co. v. New Coal Co.*, 415 F. Supp. 2d 647, 655–56 (W.D. Va. 2006) (Jones, J.) (finding similar "arising out of" language in an insurance policy precluded coverage under a policy's automobile exclusion); *PBM Nutritionals, LLC v. Lexington Ins. Co.*, 724 S.E.2d 707, 714 (Va. 2012) (upholding "broad, but not unlimited" language in a policy that excluded coverage for incidents outside the scope of "traditional" coverage).

W.W.'s posits ambiguity in the Policy in two ways. First, W.W. argues the Automobile Exclusion is "unintelligible" when the definition of the word "claim" is integrated into the exclusion. (Dkt. 38 at ECF 3). However, "[a]s with other contracts, when interpreting a policy courts must not strain to find ambiguities, or examine certain specific words or provisions in a vacuum, apart from the policy as a whole." *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 636 (4th Cir. 2005) (citations omitted) (interpreting an insurance contract under Virginia law).

Here, W.W. asks the Court to do just that: strain to find the word "claim" ambiguous in isolation, and then read any ambiguity back into the exclusion as a whole. This would be "undue strain" for several reasons. *Bankshares Corp.*, 407 F.3d at 641. First, even if "claim" was not defined in the Policy, the Fourth Circuit has had little trouble defining the word when unaccompanied by a definition. *Ball v. NCRIC, Inc.*, 40 F. App'x 760, 764 (4th Cir. 2002) ("[T]he most common meaning of the noun 'claim' is 'demand.'"). Moreover, the fact that the definition of "claim" in the Policy does not define what "notice" is required, does not result in ambiguity, but merely permits a claim to take multiple forms (*e.g.*, a demand letter, an oral demand, a complaint, *etc.*). The broad language actually favors the insured, by providing

coverage to more than just those "claims" articulated in legal complaints. Lastly, the word "claim" is used elsewhere in the Policy and is not a unique term suffering from ambiguity due to a lack of context.

Second, W.W. proposes an alternative interpretation of the Automobile Exclusion that would make the exclusion ambiguous. W.W. posits the Automobile Exclusion can be understood as permitting coverage for automobile accidents arising from W.W.'s "wrongful acts"[3] (*e.g.,* negligent roadway engineering), but excluding coverage for automobile accidents caused by the insured during the course of their professional service. Stated differently, W.W. proposes the Policy will not cover automobile accidents involving W.W.'s employees—but will cover automobile accidents resulting from W.W.'s negligence as a roadway engineering firm. Yet this interpretation is not borne out by the language in the Policy.

The Automobile Exclusion does not carve out and permit coverage for automobile accidents resulting from W.W.'s wrongful acts as a civil engineering firm. Rather, the Automobile Exclusion excludes coverage for "*any* claim which arises from, or is related to, *any* collision or accident involving an automobile . . ." (Dkt. 27-1 at ECF 28) (emphasis added). This is broad exclusionary language that makes no reference to *who* caused the accident—only *what* caused the accident. In essence, W.W. wants the Court to re-write the Policy to limit the scope of

---

[3] Under the Policy:

> The term *wrongful act* means any of the following that any *insured* actually or allegedly commits, but only in the performance of *professional services* rendered by or on behalf of the *named insured*:
>     1. An act, error, omission or failure to perform;
>     2. Breach of contract in failing to provide or perform agreed upon *professional services*;
>     3. A conflict of interest in representing clients with adverse interests; or
>     4. The unauthorized practice of law.
>     . . . .

(Dkt. 27-1 at ECF 23) (emphasis in original).

the Automobile Exclusion. However, "the court cannot make a new contract for the parties different from that plainly intended and thus create a liability not assumed by the insurer." *Pilot Life Ins. Co. v. Crosswhite*, 145 S.E.2d 143, 146 (Va. 1965).

**B.     The "Reasonable Expectations" Doctrine is Inapplicable**

Notwithstanding the absence of any ambiguity in the Automobile Exclusion, or perhaps because of it, W.W. argues its reasonable expectations illuminate ambiguity in the Automobile Exclusion. Under the "reasonable expectations" doctrine, "a court examines the objectively reasonable expectations of the contracting parties to give meaning to ambiguous policy provisions . . . ." *Norfolk & W. Ry. Co. v. Accident & Cas. Ins. Co. of Winterthur*, 796 F. Supp. 929, 933 (W.D. Va. 1992), *aff'd in part, appeal dismissed in part,* 41 F.3d 928 (4th Cir. 1994). However, "Virginia has never explicitly adopted the 'reasonable expectations' doctrine . . . ." *Firemen's Ins. Co. of Washington, D.C. v. Kline & Son Cement Repair, Inc.*, 474 F. Supp. 2d 779, 798 (E.D. Va. 2007). "Therefore, since Virginia courts do not interpret a contract based on the reasonable expectations of the parties, such analysis is of no force under Virginia law." *Id.* at 524 (citing *Jarrett v. Goldman*, 67 Va. Cir. 361 (2005)).

However, even if the "reasonable expectations" doctrine did apply, "the doctrine is used . . . to *clarify* an ambiguity, not *create* one." *Nationwide Mut. Ins. Co. v. Overlook, LLC*, 785 F. Supp. 2d 502, 524 (E.D. Va. 2011) (emphasis in original). Here, W.W. attempts to do just that: use its expectation that such automobile accidents would be covered under the Policy to create ambiguity in an otherwise unambiguously broad exclusion. Therefore, the Court finds this argument to be without merit.

## IV. Conclusion

The Court finds the language of the Automobile Exclusion to be unambiguous. The exclusion removes from the scope of coverage all claims involving automobile accidents. Therefore, Admiral is not obligated under the language of the Policy to defend or provide coverage for the underlying actions. Accordingly, I will grant Admiral's motion for summary judgment, deny W.W.'s motion for summary judgment, and find the Automobile Exclusion precludes coverage for the underlying actions.

The Clerk of the Court is directed to send a certified copy of this memorandum opinion and accompanying Order to all counsel of record.

Entered this  21ST  day of June, 2018.

*[Signature: Norman K. Moon]*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE